

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0594-11

---

### THE STATE OF TEXAS

### v.

### ROBERT JOSEPH SCHMITT, Appellee

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

---

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. WOMACK, J., concurred. MEYERS, J., dissented.

### O P I N I O N

Robert Schmitt was convicted of two counts of aggravated sexual assault of a child alleged to have occurred before an amendment to Penal Code § 3.03 permitted cumulative sentencing. The trial judge nevertheless cumulated Schmitt's sentences. Schmitt challenged the cumulation in a motion for judgment nunc pro tunc, but that procedural device corrects only clerical errors. We affirm the court of appeals's judgment vacating the trial court's

order granting the judgment nunc pro tunc.

**Facts**

In the fall of 1996, L.H. had been dealing with significant family issues. Not only were her parents divorcing, but her mother was ill and had twice been rushed to the hospital with seizures. Fearing that these issues were taking a toll on his thirteen-year-old daughter, L.H.'s father contacted the school to request a counselor who could help. The school put the family in touch with Schmitt, who began counseling L.H. in September 1996.

Schmitt, however, cared more about taking advantage of his young patient's emotional state than about helping her through her troubles. Instead of counseling her, he initiated a sexual relationship with her. Schmitt first attempted sexual intercourse with L.H. around November 1996, but had to stop because it hurt her too much. Undeterred, Schmitt carried on the relationship and later fully engaged in sexual intercourse with L.H. for the first time around June 1997. Schmitt continued his assaults until the summer of 1998, totaling about fifty such incidents.

After L.H.'s outcry to the police, the grand jury returned a two-count indictment alleging that the sexual assaults occurred "on or about" June 9, 1997 and November 1, 1996. Both alleged dates preceded a 1997 amendment to Penal Code § 3.03, effective September 1, 1997, that first allowed a trial judge to cumulate sentences in such circumstances.[1] The

---

[1] *See* Act of June 13, 1997, 75th Leg., R.S., ch. 667, § 2, 1997 Tex. Gen. Laws 2250, 2252–53.

jury convicted Schmitt on both counts and assessed twenty years' imprisonment for each offense. The trial judge sentenced Schmitt and ordered that the two terms run cumulatively for a total of forty years' imprisonment.

## Procedural History

In 2003, Schmitt unsuccessfully appealed his conviction, raising twenty-three issues, none of which challenged his cumulated sentence.[2] Pursuant to Code of Criminal Procedure article 11.07, Schmitt then filed an initial habeas application in 2004 challenging his conviction on four grounds unrelated to the trial judge's cumulation. We denied his initial habeas application.[3] In 2009, Schmitt finally challenged his cumulated sentence for the first time in a subsequent habeas application, arguing that the pre-amendment dates in both the indictment and the judgments rendered his cumulated sentence void. We dismissed his subsequent application under article 11.07, § 4.[4]

After these unsuccessful challenges, Schmitt filed a motion for judgment nunc pro tunc with the trial court on February 8, 2010, claiming that the original trial judge had committed a "clerical error" by cumulating his sentence.[5] The trial judge granted Schmitt's

---

[2] *Schmitt v. State*, No. 12-01-00306-CR, 2003 WL 22411210 (Tex. App.—Tyler Oct. 22, 2003, no pet.).

[3] *Ex parte Schmitt*, No. WR-60,272-01 (Tex. Crim. App. Feb. 16, 2005) (denied without written order).

[4] *Ex parte Schmitt*, No. WR-60,272-02 (Tex. Crim. App. Oct. 2, 2009) (dismissed without written order).

[5] Appellee's Mot. for J. Nunc Pro Tunc 1.

motion and deemed the cumulated sentence "illegal and unauthorized by law."[6] The trial judge then ordered Schmitt's sentences to run concurrently. On the State's appeal, the court of appeals vacated the judgment nunc pro tunc and reinstated the original cumulated sentence because "the trial court acted to change a judicial determination, rather than correct a clerical error . . . ."[7] We agree.

## Analysis

The traditional purpose of a judgment nunc pro tunc is "to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time."[8] A court cannot grant a judgment nunc pro tunc to "change a court's records to reflect what it believes should have been done."[9] Therefore, "there must be proof that the proposed judgment was actually rendered or pronounced at an earlier time."[10] Moreover, a judgment nunc pro tunc may fix only clerical, not judicial, errors.[11] The difference between the two, itself a question of law, "depends on the nature of

---

[6] *State v. Schmitt*, No. 296-81160-00 (296th Dist. Ct., Collin County, Tex. Mar. 1, 2010).

[7] *State v. Schmitt*, No. 05-10-00337-CR, 2011 WL 1126044, at *2 (Tex. App.—Dallas March 24, 2011).

[8] *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim App. 1988).

[9] *Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007).

[10] *Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim. App. 1986) (per curiam).

[11] *Ex parte Poe*, 751 S.W.2d at 876.

the error, not on who made the error."[12] Judicial errors result from "judicial reasoning."[13] If the trial judge must "exercise discretion or resolve conflicting legal claims," then he or she has exercised judicial reasoning.[14] In contrast, a trial judge commits a clerical error if he or she unintentionally fails to do some required, ministerial action "that is so obviously spelled out that the judge would not have any discretion about whether or not to perform the duty."[15]

Our previous cases have defined the limited scope of a judgment nunc pro tunc. In *Ex parte Dopps*, for example, we vacated a judgment nunc pro tunc that made a finding not included in a plea agreement.[16] In its indictment, the State alleged that Dopps murdered a man "by striking [him] about the head with a board."[17] Dopps pleaded no contest to voluntary manslaughter and was sentenced to twenty years' imprisonment.[18] Five years later, the trial judge issued a judgment nunc pro tunc that reformed the earlier judgment to include an affirmative finding that the defendant had used a deadly weapon.[19] We, however, found no

---

[12] *Smith v. State*, 15 S.W.3d 294, 299 (Tex. App.—Dallas 2000, no pet.).

[13] *See Collins*, 240 S.W.3d at 928.

[14] *Id*.

[15] *Id*.

[16] 723 S.W.2d at 671.

[17] *Id*. at 670.

[18] *Id*.

[19] *Id*.

such finding in the record and thus held that its absence, if in error, was a judicial error.[20]

As there had been no finding for the trial judge to omit through clerical error, we held that

the trial court improperly issued a judgment nunc pro tunc to make one.[21]

In *Ex parte Poe*, however, we held that a judgment nunc pro tunc was properly entered

that merely recognized a jury's prior finding that a defendant used a deadly weapon during

the commission of a crime.[22]  The jury had convicted Poe of killing a man with a handgun

but the trial judge did not properly enter the required affirmative finding on the use or

exhibition of a deadly weapon, entering instead merely: "Murder, to-wit a Handgun."[23]  We

nevertheless affirmed the judgment nunc pro tunc because the jury found Poe guilty as

charged in the indictment, which alleged the use of a handgun.[24]  Thus, the jury made the

required affirmative finding, and the trial judge committed a clerical error by failing to enter

it as required.[25]  Accordingly, the subsequent judgment nunc pro tunc merely "reformed" the

judgment "so as to show the offense of which the accused was found guilty by a court and

---

[20]  *Id.* at 670–71.

[21]  *Id.* at 671.

[22]  751 S.W.2d at 877.

[23]  *Id.* at 875.

[24]  *Id.* at 875–76.

[25]  *Id.* at 876–77 ("Obviously, the primary difference between *Dopps* and the situation before us is that a proper affirmative finding was made by the trier of fact in the applicant's case.").

jury."[26]

Schmitt's sentences, as entered, accurately reflected those returned by the jury. The jury found Schmitt guilty of the two indicted offenses and imposed two twenty-year sentences. The trial judge announced two guilty verdicts and two twenty-year sentences and accordingly entered two guilty verdicts and two twenty-year sentences into the record. No judgment or sentence was entered or omitted through clerical error. The only additional step taken by the trial judge was the cumulation of Schmitt's two twenty-year sentences. But when the trial judge cumulated the sentences, he chose to exercise a power that he had determined to be within his discretion—a determination that can only result from judicial reasoning.[27] Even if we were to assume, without deciding, that the trial judge did not possess that discretion and thus erred in cumulating the sentences—as Schmitt urges us to find—the error would lie in imposing an illegal punishment rather than its entry into the judgment and therefore cannot be characterized as clerical.[28] To the extent Schmitt's claim of error has merit, the proper avenue of redress is either an appeal or an application for a writ of habeas corpus, not a judgment nunc pro tunc. And Schmitt had the opportunity to timely assert this claim of error through both avenues, but failed to do so.

Schmitt, however, argues that because he may have exhausted those remedies,

---

[26] *Id.*

[27] *See Collins*, 240 S.W.3d at 928–29.

[28] *See Rich*, 194 S.W.3d at 512.

possibly leaving him without any other adequate remedy at law, the judgment nunc pro tunc was properly entered. As support, Schmitt notes that in *LaPorte v. State* we held that an "improper cumulation order is, in essence, a void sentence, and such error cannot be waived" and "may be raised at any time."[29] But that language does not require us to expand the narrow scope of a judgment nunc pro tunc to remedy what we have assumed, without deciding, to be an illegal sentence. In *LaPorte*, we addressed the issue of failing to properly object to an illegal sentence at trial, not the scope of a judgment nunc pro tunc.[30] Thus, our statements in *LaPorte* do not support Schmitt's claim that a judgment nunc pro tunc is the proper vehicle for his challenge.

Even more, were we to adopt Schmitt's broad interpretation of *LaPorte*, we would elevate the judgment nunc pro tunc to a far-reaching procedural device that would subsume much of the traditional appellate process and eviscerate article 11.07, § 4. Indeed, before he filed his motion for judgment nunc pro tunc, Schmitt first challenged the cumulation in his subsequent habeas application. It was only after we dismissed that application under article 11.07, § 4 that Schmitt filed his motion for judgment nunc pro tunc. But it would be quite absurd if Schmitt's failure to comply with article 11.07, § 4 created a new avenue to attack his sentence, by warping the traditional purpose of the judgment nunc pro tunc, that is so

---

[29] *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992) (en banc).

[30] *Id*. ("Consequently, a contemporaneous objection is not necessary to preserve the error for appellate review.").

contrary to the judicial interest in finality as codified in article 11.07, § 4 itself.[31]

## Conclusion

The remedy sought—in essence, a re-sentencing—does not fall within the narrow scope of a judgment nunc pro tunc, and we decline to widen it to accommodate Schmitt's procedural oversight. The court of appeals's judgment is affirmed.

DATE DELIVERED: September 12, 2012

DO NOT PUBLISH

---

[31] *See Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997) (citing legislative history to hold that the intent of the provision is "to limit a convicted person to 'one bite at the apple'").