

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00086-CR

HENRY LEE HUTCHINSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 54th District Court
McLennan County, Texas
Trial Court No. 2012-1755-C2

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

In 2013, a McLennan County[1] jury convicted Henry Lee Hutchinson of aggravated assault with a deadly weapon and assessed a sentence of seventy-five years' imprisonment. The trial court's judgment of conviction reflected the jury's verdict and sentenced Hutchinson to seventy-five years' imprisonment but contained a deadly weapon finding of "**N/A**." Shortly after it received notice that Hutchinson was released on parole on October 26, 2021, the trial court sua sponte entered a judgment nunc pro tunc that was identical to its original judgment, except it contained a deadly weapon finding of "**YES NOT FIREARM**." As a result, Hutchinson was arrested and returned to prison. The El Paso Court of Appeals reversed and remanded that judgment nunc pro tunc on grounds that, before entry of the judgment nunc pro tunc, there should have been a hearing and Hutchinson should have been given an opportunity to attend. *Hutchinson v. State*, No. 08-22-00002-CR, 2022 WL 8078770, at *2 (Tex. App.—El Paso Oct. 14, 2022, no pet.) (not designated for publication). After a hearing on remand, the trial court again entered a second judgment nunc pro tunc that contained a deadly weapon finding of "**YES NOT FIREARM**."

In this appeal, Hutchinson appeals the entry of the second judgment nunc pro tunc. He argues that, because he was prejudiced by the State's delay in seeking the deadly weapon finding, laches barred the entry of the judgment nunc pro tunc. We find that the trial court was required to reflect an affirmative deadly weapon finding and was authorized to do so through its

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

judgment nunc pro tunc and that laches was not applicable to prevent the entry of such judgment. We will affirm the trial court's judgment nunc pro tunc.

## I.      Background

In 2012, Hutchinson was indicted for the aggravated assault of Nathan Lloyd. The indictment alleged that Hutchinson "intentionally or knowingly cause[d] bodily injury to **NATHAN LOYD** by striking him with a hammer, and the Defendant did [. . .] use or exhibit a deadly weapon, to-wit: a hammer, during the commission of said assault." After a trial, the jury (1) found that Hutchinson was "guilty of the offense of Aggravated Assault, as alleged in the indictment," (2) found that the allegations of prior convictions were true, and (3) assessed his punishment at seventy-five years' imprisonment. The trial court entered its written judgment of conviction on March 27, 2013, in accordance with the jury's verdict, except that it entered a deadly weapon finding of "**N/A**."

On November 3, 2021, a notice of release of offender from the Parole Division of the Texas Department of Criminal Justice was filed in the trial court. The notice stated that Hutchinson had been released on parole on October 26, 2021. On November 8, 2021, the trial court entered a judgment nunc pro tunc and changed the deadly weapon finding to "**YES NOT FIREARM**." As a result, Hutchinson was arrested and returned to prison.[2] On appeal, the El Paso Court of Appeals reversed the judgment nunc pro tunc and remanded the case for a hearing on the judgment nunc pro tunc. *Hutchinson*, 2022 WL 8078770, at *2.

---

[2]Because Hutchinson was sentenced to seventy-five years' imprisonment, the affirmative deadly weapon finding requires him to serve a minimum of thirty calendar years in prison. *See* TEX. GOV'T CODE ANN. § 508.145(d)(2) (Supp.).

On remand, a hearing on the State's motion for entry of a judgment nunc pro tunc was held on March 3, 2023. The trial court took judicial notice of its file and heard testimony from Hutchinson. Hutchinson testified that he had been considered for parole in 2018 but was denied. He was considered for parole again in 2020 and received an FI-6, which he said granted him parole upon completion of a treatment program. Hutchinson explained that it was a six-month program, that he completed it, and that he was released on parole on October 26, 2021. He testified that fourteen days after his release, his parole officer instructed him to go to the district clerk's office. While at the clerk's office, the clerk informed him that a judgment nunc pro tunc had been entered and called deputies, who took him into custody.

Hutchinson also testified that he remembered the trial court reading the indictment and that he saw the indictment. He understood that the State alleged that he committed aggravated assault by hitting Lloyd with a hammer, causing him bodily injury. He also recalled that, in the indictment, it said that the hammer, in the manner of its use or its intended use, was capable of causing serious bodily injury.

The State brought forward a portion of the reporter's record from the 2013 trial, namely the trial court's oral pronouncements from the bench following the guilty verdict and during the punishment phase. At that point in the 2013 trial, the trial court pronounced that Hutchinson had pled "not guilty to the offense, as alleged in the indictment." The trial court further stated that "the jury returned a verdict finding [Hutchinson] guilty of the offense, as alleged in the indictment."

During closing argument at the nunc pro tunc hearing, the State argued that the entry of the deadly weapon finding following the jury trial was a mandatory duty of the trial court which,

4

if not fulfilled, was subject to correction via nunc pro tunc. The State argued principally from *Ex parte Poe*, 751 S.W.2d 873 (Tex. Crim. App. 1988) (orig. proceeding). In response, Hutchinson did not contest the applicability of *Ex parte Poe* to the facts of this case. Instead, Hutchinson urged a laches argument.

After closing arguments, the trial court took the matter under advisement. On May 12, 2023, the trial court entered its second judgment nunc pro tunc and again entered a deadly weapon finding of "**YES NOT FIREARM**." This appeal followed.

## II.     The Trial Court Was Authorized to Enter the Judgment Nunc Pro Tunc

"The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time." *Ex parte Poe*, 751 S.W.2d at 876 (quoting *Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim. App. 1986) (per curiam) (orig. proceeding)). "Even though thirty days have passed after the entry of a judgment, a trial court retains the power to enter a nunc pro tunc order correcting any 'clerical error' which may appear in the judgment." *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980) (quoting *Quintanilla v. Seagraves Ford, Inc.*, 522 S.W.2d 274 (Tex. App.—Corpus Christi 1975, no writ)). "A nunc pro tunc order may correct clerical errors in a judgment, but not judicial omissions." *Ex parte Poe*, 751 S.W.2d at 876 (citing *Ex parte Dopps*, 723 S.W.2d at 670). "A clerical error is one which does not result from judicial reasoning or determination." *Id.* (citing *Alvarez*, 605 S.W.2d at 617). Whether "an error [is] clerical or judicial is a question of law." *Id.*

In *Ex parte Poe*, the Texas Court of Criminal Appeals considered whether a trial court was authorized to enter an affirmative deadly weapon finding in a judgment nunc pro tunc, when

the original judgment did not contain a deadly weapon finding. *Id.* at 875. In that case, the indictment alleged that Poe "intentionally and knowingly cause[d] the death of [the decedent], by shooting him with a handgun," and "[t]he verdict of the jury found 'the defendant guilty as charged in the indictment.'" *Id.* at 874–75. Although the original judgment did not contain an affirmative deadly weapon finding, at a hearing on Poe's application for a writ of habeas corpus, the trial court entered a judgment nunc pro tunc and added an affirmative deadly weapon finding. *Id.* at 875. Poe maintained that the trial court was powerless to include the affirmative deadly weapon finding in a judgment nunc pro tunc. *Id.*

The Texas Court of Criminal Appeals noted that, under the former Article 42.12, Section 3f(a)(2)[3] of the Texas Code of Criminal Procedure, "[u]pon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court."

---

[3]This article is now Article 42A.054(c) of the Texas Code of Criminal Procedure, which provides, "On an affirmative finding regarding the use or exhibition of a deadly weapon as described by Subsection (b), the trial court shall enter the finding in the judgment of the court." TEX. CODE CRIM. PROC. ANN. art. 42A.054(c) (Supp.). Under subsection (b), a deadly weapon includes:

> (1)     a deadly weapon as defined by Section 1.07, Penal Code, was used or exhibited during the:
>
> (A)     commission of a felony offense; or
>
> (B)     immediate flight from the commission of a felony offense; and
>
> (2)     the defendant:
>
> (A)     used or exhibited the deadly weapon; or
>
> (B)     was a party to the offense and knew that a deadly weapon would be used or exhibited.

TEX. CODE CRIM. PROC. ANN. art. 42A.054(b) (Supp.). As applicable to this case, a deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. art. 1.07(a)(17)(B).

6

*Id.* (quoting *Ex parte Brooks*, 722 S.W.2d 140, 142 (Tex. Crim. App. 1986) (per curiam) (orig. proceeding)). The court explained that former "Article 42.12, § 3f(a)(2) clearly mandate[d] that the trial judge enter in the judgment a finding that a deadly weapon was used or exhibited during the commission of an offense, once the trier of fact make[d] a proper affirmative finding . . . ." *Id.* at 876 (citing *Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985)).

The court determined that, because the indictment charged that the offense had been committed with a deadly weapon and the jury found Poe guilty as charged in the indictment, "the trier of fact made an express determination that a deadly weapon was actually used or exhibited during the commission of the offense, thereby making a proper affirmative finding." *Id.* at 875 (citing *Polk*, 693 S.W.2d at 394). As a result, "the trial judge was required to reflect this by making a proper entry in the judgment[, and] [t]he trial judge retained no discretion to do otherwise." *Id.* at 876. Because the trial court had no discretion, the error in not entering the affirmative deadly weapon finding in the original judgment was clerical, not judicial. *Id.* Consequently, the trial court was authorized to correct the error in a judgment nunc pro tunc, because "[t]he trial court ha[d] the right to correct the records to reflect the truth even though the findings may not be beneficial to the person convicted." *Id.* (citing *Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976)).

Likewise, in this case, the indictment alleged that Hutchinson committed aggravated assault by striking the victim with a hammer and that he used or exhibited a deadly weapon, a hammer, during the commission of said assault. The jury found Hutchinson guilty of aggravated assault as alleged in the indictment. Thus, there was an affirmative finding by the trier of fact that Hutchinson "used or exhibited [a deadly weapon] during the commission of the offense."

7

*Id.* at 875. As a result, the trial court was required to enter that finding in its judgment, and it did not have discretion to do otherwise. *Id.* at 876; *see* TEX. CODE CRIM. PROC. ANN. art. 42A.054(c). Thus, as in *Ex parte Poe*, the records in this case showed that the trier of fact made an affirmative deadly weapon finding, and the trial court was authorized to correct the judgment to reflect that finding through a judgment nunc pro tunc, "even though the finding[] may not be beneficial to" Hutchinson. *Ex parte Poe*, 751 S.W.2d at 876.

## III.    Laches is Not Applicable in This Appeal

Nevertheless, Hutchinson, in his sole issue, argues that laches prevents the entry of the judgment nunc pro tunc because he was prejudiced by the delay in modifying the judgment. He argues that he was harmed because the parole board relied on the original judgment and that he completed a six-month treatment program as a condition of obtaining parole. In addition to arguing that Hutchinson was not prejudiced by the judgment nunc pro tunc, the State raises the question of whether laches is applicable to this proceeding.

"The common-law doctrine of laches is defined as 'neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.'" *Ex parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013) (orig. proceeding) (quoting *Ex parte Carrio*, 992 S.W.2d 486, 487 n.2 (Tex. Crim. App. 1999) (orig. proceeding), *overruled on other grounds by Ex parte Perez*, 398 S.W.3d 206). As Hutchinson noted, the Texas Court of Criminal Appeals first recognized the applicability of laches in 1999 in a habeas corpus proceeding brought under Article 11.07 of the Texas Code of Criminal Procedure. *Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999) (orig. proceeding), *overruled on other grounds by Ex parte Perez*, 398 S.W.3d 206); TEX. CODE CRIM.

8

PROC. ANN. art. 11.07 (Supp.). As the court explained in *Perez*, "In *Carrio*, we reasoned that laches could be the basis for denial of habeas relief even in the absence of an applicable statute or rule because 'laches is an equitable common-law doctrine,' and habeas corpus is an equitable remedy." *Ex parte Perez*, 398 S.W.3d at 210 (quoting *Ex parte Carrio*, 992 S.W.2d at 488); *see Ex parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012) (orig. proceeding) ("The [writ of habeas corpus] is reserved for extraordinary equitable matters when no other legal remedy is available; it is not merely another layer of, nor a substitute for, an appeal." (citing *Ex parte Clore*, 690 S.W.2d 899, 900 (Tex. Crim. App. 1985) (orig. proceeding))). In other words, because an applicant for a writ of habeas corpus seeks equitable relief, the court found it appropriate to employ laches to evaluate whether the equitable relief is warranted.[4] *Ex parte Perez*, 398 S.W.3d at 211.

In *Perez*, the court "reaffirm[ed] *Carrio*'s holding that Texas courts may apply the common-law doctrine of laches *in determining whether to grant habeas relief*." *Id.* at 215 (emphasis added) (citing *Ex parte Carrio*, 992 S.W.2d at 488). However, the court gave no indication in *Perez* that it would expand the application of laches to non-equitable proceedings. Further, Hutchinson has not cited, nor have we found, any Texas Court of Criminal Appeals opinions that expand the application of laches beyond equitable proceedings, such as habeas corpus, in a post-conviction context.

In this case, the State did not seek an equitable remedy. Rather, its motion for entry of a nunc pro tunc judgment sought only the entry of the judgment that the trial court was statutorily

---

[4]Notably, in *Perez*, the court "expand[ed] the definition of prejudice under the existing laches doctrine to permit consideration of anything that places *the State* in a less favorable position, including prejudice to *the State's ability to retry a defendant*, so that a court may consider the totality of the circumstances in deciding whether to grant equitable relief." *Ex parte Perez*, 398 S.W.3d at 215 (emphasis added).

required to enter: a judgment that reflected the affirmative deadly weapon finding as found by the jury. *See Ex parte Poe*, 751 S.W.2d at 876; TEX. CODE CRIM. PROC. ANN. art. 42A.054(c). Hutchinson has not cited, nor have we found, any appellate court opinions that applied laches to prevent a trial court from entering a judgment nunc pro tunc to add a statutorily required finding.[5]

The trial court was statutorily required to reflect the jury's affirmative deadly weapon finding in its judgment, retained no discretion to do otherwise, and was authorized to include the finding in its judgment nunc pro tunc. We find that it would not be appropriate to apply the equitable doctrine of laches in this context. We overrule Hutchinson's sole issue.

## IV. Conclusion

For the reasons stated, we affirm the trial court's judgment nunc pro tunc.

Scott E. Stevens
Chief Justice

Date Submitted:     October 2, 2023
Date Decided:       October 13, 2023

Do Not Publish

---

[5]Hutchinson cited *Lindsey v. State* in support of his contention that laches is not limited to habeas corpus proceedings. *See Lindsey v. State*, No. 05-06-00563-CR, 2007 WL 1310955 (Tex. App.—Dallas May 7, 2007, pet. ref'd) (not designated for publication). In *Lindsey*, the trial court entered a judgment nunc pro tunc to reflect the correct description of the offense nine years after it entered its original judgment. *Id.* at *1. On appeal, Lindsey argued that laches barred the judgment nunc pro tunc. *Id.* at *3. Without considering whether laches was applicable, the Dallas Court of Appeals held that "appellant ha[d] not shown the necessary prejudice to invoke the doctrine of laches." *Id.* (citing *Ex parte Carrio*, 992 S.W.2d at 488 & n.3). Because the question of whether laches was applicable to prevent the entry of the judgment nunc pro tunc was not considered by the Dallas Court of Appeals, *Lindsey* does not support Hutchinson's contention.

10